**UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANGELA MALONEY, individually, on behalf of others similarly situated<br>7680 Tremayne Pl., Apt. 310<br>McLean, VA 22102<br><br>       Plaintiff,<br><br> vs.<br><br>JOHN J. SULLIVAN, in his official capacity as Acting Secretary, United States Department of State<br>The Executive Office<br>Office of the Legal Adviser, Room 5519<br>United States Department of State<br>2201 C Street, NW<br>Washington, DC 20520-6310;<br><br>       Defendant. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

## I.    INTRODUCTION

1.    This class action lawsuit brought by Representative Plaintiff Angela Maloney ("Plaintiff Maloney"), on her own behalf and on behalf of the proposed Class identified below, challenges the systematic failure of the U.S. Department of State ("DOS") to meet its obligations under the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 and 794 *et seq*. ("Rehabilitation Act").

2.    Specifically, DOS does not consider certain forms of reasonable accommodation for Foreign Service Officers ("FSOs") with disabilities.[1]

3.    The United States Foreign Service, a branch of DOS, works through its FSOs to "advocate American foreign policy, protect American citizens, and promote American interests throughout the world." *Taylor v. Rice*, 451 F.3d 898, 900 (D.C. Cir. 2006).

4.    FSOs "perform traditional diplomatic responsibilities, including trade promotion, political and economic reporting, and consular services and protection." *Id*.

5.    Like any federal agency, DOS is obligated to serve as a model employer for individuals with disabilities. 29 C.F.R. § 1614.203(c) ("The Federal Government shall be a model employer of individuals with disabilities.").

6.    DOS fails to meets its obligation to serve as a model employer for FSOs with disabilities by systematically failing to consider certain forms of reasonable accommodations for them.

7.    As a regular practice and policy, DOS's designated disability accommodations subdivision, the Disability and Reasonable Accommodation Division within DOS's Office of Accessibility and Accommodation ("DRAD"), fails to consider modified marginal job duties and preferential reassignment to a vacant position as possible forms of reasonable accommodation.

---

[1] Throughout, the terms disability and disabled refer only to an actual disability and/or record of disability. *See* 29 C.F.R. § 1630.2(o)(4) ("A covered entity … is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the 'regarded as' prong….") (internal citation omitted); 29 U.S.C. § 791(f) (Rehabilitation Act incorporates the standards for liability set forth in the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.*); 29 C.F.R. § 1614.203(b).

8.      As a regular practice and policy, DOS's Career Development and Assignments ("CDA") – responsible for assigning junior FSOs to positions around the world – does not consider modified job duties, preferential reassignment to a different position, nor reasonable accommodations generally when assigning junior FSOs.

9.      CDA is an office within DOS separate from DRAD.

10.     DRAD directs FSOs with disabilities who request modified job duties and/or preferential reassignment to make such requests for reasonable accommodations to CDA.

11.     In issuing FSOs their job assignments, CDA disclaims any responsibility for providing reasonable accommodations to FSOs with disabilities.

12.     CDA advises FSOs with disabilities to direct requests for reasonable accommodations to DRAD despite CDA being the only DOS subdivision with authority to modify FSOs' job duties and assignments.

13.     Because of DOS's systematic failure to implement a comprehensive reasonable accommodation procedure for FSOs, there is no subdivision within DOS responsible for considering modified job duties as a form of reasonable accommodations for FSOs with disabilities.

14.     Because of DOS's systematic failure to implement a comprehensive reasonable accommodation procedure for FSOs, there is no subdivision within DOS responsible for considering preferential reassignment to a vacant position as a form of reasonable accommodations for FSOs with disabilities.

15.     Plaintiff Maloney is a career candidate FSO hired on the political track at DOS.

16.     Plaintiff Maloney was not hired as a career candidate FSO on the consular track at DOS.

17.     Consular work for FSOs includes reviewing applications for visas and determining whether to grant such applications according to a detailed adjudication protocol. This is often referred to colloquially as "visa line work."

CLASS ACTION COMPLAINT

18.     FSOs assigned to visa line work must perform frequent, repetitive hand motions to complete such work.

19.     DOS has known for years that FSOs serving around the world regularly develop injuries resulting from mandatory repetitive motions while stationed at posts performing visa and passport adjudications.

20.     In 2008, the DOS's Embassy in Warsaw, Poland sent a diplomatic cable reporting that half of visa line adjudicators were experiencing physical symptoms related to repeated-use injuries such as carpel tunnel syndrome.

21.     The 2008 diplomatic cable from Embassy Warsaw also stated that employees performing visa line adjudicators were requiring medical leave related to their repeated-use injuries.

22.     Several FSOs working in Chennai in 2015-2017 also developed repeated-use injuries.

23.     DOS maintains a pattern, practice, and/or policy of systematically excluding from consideration a reasonable accommodation involving modification of FSOs' non-essential job duties, such as, *e.g.,* visa and passport adjudications duties for career candidate FSOs.

24.     DOS maintains a pattern, practice, and/or policy of systematically excluding consideration of reassignment of FSOs to a vacant position within DOS as a form of reasonable accommodation, such as, *e.g.,* reassigning career candidate FSOs injured while performing visa and passport adjudications to duties not including visa and passport adjudications.

25.     DOS implements its pattern, practice, and/or policy of systematically excluding consideration of all possible forms of reasonable accommodation by preventing DRAD, DOS's only subdivision designated to assist with reasonable accommodations, from addressing any FSO's request for modified job duties and/or preferential reassignment as a form of reasonable accommodation.

3

CLASS ACTION COMPLAINT

26.     Plaintiff Maloney challenges DOS's systematic pattern, practice, and/or policy of failing to consider certain forms of possible reasonable accommodation available under the Rehabilitation Act in response to FSOs' requests for reasonable accommodation.

27.     The Class is made up of all Foreign Service Officers who: (1) had an actual disability or record of disability, as defined in the Rehabilitation Act of 1973; (2) requested one or more accommodations for that disability through DRAD and/or CDA; and (3) were denied reasonable accommodations of either job reassignment or modification of job duties by the State Department from January 29, 2017 to the final disposition of this case.

28.     A Subclass is made up of all members of the Class defined above and: (1) whose disability was flexor tenosynovitis, carpal tunnel syndrome, and/or a similar repeated-use hand or wrist impairment; (2) who were assigned visa line work; and (3) who were denied a reasonable accommodation that would relieve them of performing the duties of visa and passport adjudication.

29.     During the Class Period, DOS refused to consider certain possible forms of reasonable accommodation when such were requested by FSOs with disabilities. Plaintiff Maloney seeks relief for the Class pursuant to the Rehabilitation Act. The relief sought is to enjoin DOS's systematic failure to consider all forms of reasonable accommodation, in addition to providing back pay, compensatory damages, declaratory relief, attorneys' fees and costs, and interest.

## II.     THE PARTIES

30.     Representative Plaintiff Maloney resides in the State of Virginia. At all times relevant to this Complaint, Plaintiff had flexor tenosynovitis, a record of flexor tenosynovitis, and was perceived by DOS as an individual who had flexor tenosynovitis.

31.     Flexor tenosynovitis is a physical impairment which constitutes a "disability" under the Rehabilitation Act. *See* 29 C.F.R. § 1630.2(h)(1) (definition of "physical … impairment"), j(3)(iii) ("Predictable assessments").

32.     At all times relevant to this Complaint, Plaintiff was a qualified individual with a disability under the Rehabilitation Act.

4

CLASS ACTION COMPLAINT

33.     Defendant John J. Sullivan is the acting United States Secretary of State. He is sued in his official capacity.

## III.     JURISDICTION AND VENUE

34.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this case is brought under the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq*.

35.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because DOS is located in this District and a substantial part of the events giving rise to the claims set forth herein occurred in this District.

## IV.     VISA LINE WORK IS NOT AN ESSENTIAL JOB FUNCTIONS OF A CAREER CANDIDATE FOREIGN SERVICE OFFICER

36.     DOS drafts, revises, and maintains the *Foreign Affairs Manual* ("FAM") and *Foreign Affairs Handbook* ("FAH") – two documents in which DOS "articulates official guidance, including procedures and policies, on matters relating to Department management and personnel…." 2 FAM 1111.1(a).

37.     Plaintiff Maloney, like most if not all other career candidate FSOs, was hired by DOS for an initial five-year limited term. *See* 22 U.S.C. § 3946.

38.     During her initial five-year appointment, Plaintiff Maloney's fitness for career appointment will be evaluated. 22 U.S.C. § 3946; 3 FAM 2216.2-1(a). https://fam.state.gov/fam/03fam/03fam2210.html#M2210.

39.     In early 2016, during a tour of duty performing visa adjudication in Chennai, India, as a career candidate FSO, Plaintiff Maloney developed flexor tenosynovitis as a result of the repetitive hand motions necessary to complete such visa adjudications.

40.     By approximately January 1, 2016, Plaintiff Maloney began experiencing numbness in her right wrist while working on the visa line. This numbness persisted throughout the work day, when Plaintiff Maloney would adjudicate, on average, 100-120 visas per morning[2],

---

[2] In late 2015, Plaintiff Maloney believes she adjudicated an average of 130-160 visas per morning. Afternoons at Plaintiff Maloney's Chennai posting were spent performing data entry in support of visa adjudications and visa renewal adjudications.

5

and would recede after the end of the work day when she no longer needed to perform repetitive hand motions.

41.    After attempting ultimately unsuccessful corrective treatment at her assigned post in Chennai, India, Plaintiff Maloney was medically evacuated to the United States on or about February 17, 2016.

42.    From approximately February 17, 2016 to June 2016, Plaintiff Maloney remained in the United States to receive treatment for her flexor tenosynovitis, and to await her next assignment.

43.    In June 2016, Plaintiff Maloney was assigned to another position requiring visa line work, *i.e.,* frequent, repetitive hand motions. Plaintiff's physician prohibited Plaintiff Maloney from serving in this assignment because the dictation software DOS offered to provide to Plaintiff to allow her to adjudicate visas would nevertheless have required frequent, repetitive hand motions to manipulate a physical toggle which she would have had to use in conjunction with the dictation software offered by DOS to start and stop the software during interviews with visa applicants.

44.    Thereafter, Plaintiff Maloney was placed in a temporary, domestic short-tour in the Office of Central Asian Affairs in the Bureau of South and Central Asian Affairs as a Regional Affairs Desk Officer.

45.    Plaintiff Maloney has received meritorious honor awards from DOS for her performance as a FSO, including two awards in June 2017 she received from then-Acting Assistant Secretary, Bureau of South and Central Asian Affairs, for her work as part of the Office of Central Asian Affairs.

46.    On March 2, 2017, Plaintiff Maloney filed an application for an administrative waiver with DOS, with supporting written medical documentation, seeking to be assigned to a vacant position that did not require repetitive hand motions.

47.    On March 15, 2017, Plaintiff Maloney's application for an administrative waiver was summarily denied by then-Acting Director General Arnold A. Chacon, who directed Plaintiff Maloney to discuss reasonable accommodations with DRAD.

CLASS ACTION COMPLAINT

48.     Thereafter, DOS assigned Plaintiff Maloney to perform visa line work in Tegucigalpa, Honduras in direct contravention of multiple doctors' letters stating that Plaintiff Maloney was medically precluded from performing the repetitive hand motions required by visa line work.

49.     DOS eventually downgraded Plaintiff Maloney's medical clearance in 2017, thereby preventing her from traveling to her then-assigned visa line work post in Honduras. Afterward, Plaintiff Maloney's career came to a screeching halt while DOS searched and continues to search for a medically approved post to which Plaintiff Maloney may be assigned while nevertheless maintaining that such assignment must involve visa line work.

50.     Plaintiff Maloney's repeated pleas for any assignment, other than an assignment near-guaranteeing permanent damage to her wrists, have been rejected, including on October 16, 2017 by Deputy Assistant Secretary Constance Dierman in response to Plaintiff Maloney's September 20, 2017 second application for an administrative waiver. Plaintiff Maloney's second application for an administrative waiver was also supported with medical documentation attached to the application.

51.     While DOS searches for medically approved posts to which Plaintiff Maloney may be assigned by CDA, DOS has assigned Plaintiff Maloney to a "bridge" position where her job duties require repetitive hand motions because a majority of the work entails copying information from one document to another on a computer, causing Plaintiff Maloney the same harm that she sought to avoid on the visa line.

52.     After extensive emails and meetings with DOS over the course of months to find possible ways to perform her job duties at her bridge assignment, including with DRAD and her current supervisors, DOS continued to direct Plaintiff Maloney to perform work which requires repetitive hand motions due to the nature of the work and the limitations of voice dictation software. A human assistant was similarly ineffective, as Plaintiff Maloney explained during an in-person meeting on January 30, 2018 with DOS personnel, including DRAD staff.

CLASS ACTION COMPLAINT

53.     As a result of DOS's failure to reasonably accommodate Plaintiff Maloney, she has taken medical leave and filed a workers compensation claim – incurring financial, physical, and emotional harms which could have been avoided had DOS considered preferential reassignment to a vacant post or modified job duties which did not require repetitive hand motions in violation of Plaintiff Maloney's doctors' orders.

54.     The FAH states that a career candidate FSO "must serve in consular work abroad" for "no less than ten months," but permits that "work in the administrative cone can be substituted for the consular requirement at the discretion of HR/CDA." 3 FAH-1 H-2240.

55.     The ten-month consular work requirement for career candidate FSOs is not statutorily mandated by the Foreign Service Act of 1980, 22 U.S.C. §§ 3901, *et seq.* ("FSA").

56.     There is no provision in the FSA that specifically requires career candidate FSOs to perform at least ten months of consular work to receive career appointment in the Foreign Service.

57.     The sole criteria by which career candidate FSOs are evaluated to receive career appointment, *i.e.,* promoted from career candidate status under a limited appointment to a commissioned FSO, are contained in general terms in 3 FAM 2245 and in specific terms in the Precepts for the Foreign Service Officer Commissioning and Tenure Board ("Precepts").

58.     The Precepts are found in 3 FAH-1 H-2240 Exhibit H-2245.3 and are currently available at https://fam.state.gov/fam/03fah01/03fah012240.html#X2245_3.

59.     The Precepts do not contain any explicit reference to visa adjudication as a basis to approve or disapprove of a commission for a career candidate FSO.

60.     The Precepts do not contain the word "visa."

61.     DOS hires individuals for limited term, non-FSO appointments as Consular Fellows.

62.     Consular Fellows' primary job duty is to work on visa lines and perform duties related directly thereto for DOS.

CLASS ACTION COMPLAINT

63.     One of the essential job functions of a Consular Fellow at DOS is to adjudicate visas at DOS posts throughout the world.

64.     When necessary, DOS can increase hiring of Consular Fellows to meet DOS's increased visa adjudication needs. *See* 82 Fed. Reg. 45 (Presidential Executive Order directing Secretary of State to "immediately expand the Consular Fellows Program, including by substantially increasing the number of Fellows [and] lengthening or making permanent the period of service … to ensure that nonimmigrant visa-interview wait times are not unduly affected.").

65.     Plaintiff Maloney requested that DOS provide a written description of the essential job duties of her position, including in emails with Louis Saddler at DRAD.

66.     As of the filing date of this complaint, DOS has failed to provide Plaintiff Maloney with a written description of the essential job duties of her position.

67.     As of the filing date of this complaint, DOS has failed to provide Plaintiff Maloney any written substantiation that visa adjudication is an essential job function of the position to which she was hired.

68.     Consular work is a marginal job function of a career candidate FSO, which DOS can modify as a form of reasonable accommodation.

69.     Consular work is not an essential job function of a career candidate FSO.

70.     Adjudications of visas is not an essential job function of a career candidate FSO.

71.     Plaintiff Maloney's essential job functions as a career candidate FSO do not include visa adjudications.

72.     Plaintiff Maloney's essential job functions as a career candidate FSO do not include consular work.

73.     It is possible for a non-disabled career candidate FSO to be promoted to a commissioned, career FSO without performing Consular work. *See* 3 FAH-1 H-2240.

CLASS ACTION COMPLAINT

## V.     DOS FAILS TO CONSIDER MODIFICATION OF MARGINAL JOB FUNCTIONS AS A FORM OF REASONABLE ACCOMMODATION

74.     Modification of job duties is a form of reasonable accommodation available under the Rehabilitation Act. 42 U.S.C. § 12111(9)(B).

75.     According to then-Director General Arnold A. Chacon, the Office of Accessibility and Accommodation, Disability and Reasonable Accommodation Division (HR/OAA/DRAD) ("DRAD") "is the Department's designated decision maker on requests for reasonable accommodations for qualified individuals with disabilities."

76.     Plaintiff Maloney has been referred to DRAD to engage in the interactive process regarding potential reasonable accommodations by a DOS Human Resources Specialist at its Bureau of Human Resources.

77.     Plaintiff Maloney has repeatedly requested that DOS, including DRAD, modify her job duties to avoid repetitive hand motions while still allowing her to obtain the necessary experience to receive appointment as a commissioned career FSO.

78.     DOS's proposed accommodations all entailed using software which would have nonetheless required Plaintiff Maloney to repeatedly use a physical interface in addition to voice commands, in violation of six doctors' written opinions.

79.     Plaintiff Maloney provided to DOS her doctors' written medical opinions stating she cannot perform work that requires repetitive hand motions.

80.     On November 7, 2017, DOS's Bureau of Medical Services confirmed that DOS was on notice that Plaintiff Maloney's "orthopedist strongly cautions against returning to the work that initially led to this overuse injury you are dealing with."

81.     On November 7, 2017, DOS's Bureau of Medical Services directed Plaintiff Maloney to "contact [her] CDO or HR/ER/WLP" if she believed she had "a medical disability and require[d] reasonable accommodation for this."

CLASS ACTION COMPLAINT

82.     A disability accommodation analyst at DRAD, Louis Saddler, represented to Plaintiff Maloney that "[t]he decision regarding whether you must perform visa line work is a CDA [Career Development and Assignments] decision."

83.     In the EEO Counselor Report related to Plaintiff's March 2017 EEO Complaint, the then-Acting Division Chief of DRAD, Linda Lee, averred that "DRAD has no jurisdiction whatsoever, regarding assignments."

84.     Plaintiff Maloney's Career Development Officer ("CDO") is Andrew Aylward.

85.     DOS CDO Aylward refused to consider Plaintiff Maloney's request for reasonable accommodations in the form of modified job duties, *i.e.,* job duties which do not involve repetitive hand motions.

86.     According to DOS CDO Aylward, questions on reasonable accommodation are outside the purview of CDA and should be addressed to DRAD.

87.     DRAD has failed to meaningfully engage in the interactive process with Plaintiff Maloney to allow her to continue garnering the professional accomplishments for her to obtain tenure as a career FSO.

88.     DOS's sole division responsible for reasonable accommodations, DRAD, does not consider modified job duties as a form of reasonable accommodations.

89.     DOS does not consider modified job duties as a form of reasonable accommodations.

90.     DOS's CDA does not consider modified job duties as a form of reasonable accommodation.

## VI.    DOS'S POLICY OF FAILING TO CONSIDER REASSIGNMENT AS A FORM OF REASONABLE ACCOMMODATION

91.     Preferential reassignment to a vacant position is a form of reasonable accommodation available under the Rehabilitation Act. 42 U.S.C. § 12111(9)(B).

92.     Plaintiff Maloney has repeatedly requested that DRAD reassign her to a vacant position which does not require repetitive hand motions so that she can continue to obtain

necessary experience to receive career appointment to the Foreign Service without exacerbating her flexor tenosynovitis condition.

93.     DOS has refused Plaintiff Maloney's request for reassignment to a vacant position which does not require repetitive hand motions.

94.     Plaintiff Maloney has offered to work in DOS postings around the world in difficult conditions, for example Embassy Dhaka in Bangladesh, so long as her duties do not involve repetitive hand motions, in accordance with her physicians' written medical letters concluding Plaintiff Maloney cannot perform tasks that require repetitive hand motions. DOS refused Plaintiff Maloney's offer.

95.     In 2017, DOS placed Plaintiff Maloney in a temporary position which requires repetitive hand motions, exacerbating her condition.

96.     Plaintiff Maloney has requested reassignment from such temporary position because this position does not allow her to perform her essential job functions with or without reasonable accommodation.

97.     In December 2017, after an in-person examination, DOS's in-house industrial hygienist, Nerhosshia Davis-Smith, M.S., concluded that DOS "cannot provide or recommend any items that will allow you to perform repetitive task long-term adequately and pain free."

98.     DOS industrial hygienist Davis-Smith "recommended that [Plaintiff Maloney] work with DRAD and your office to determine what task best suits your needs as they relate to your current physical condition."

99.     Less than two months after DOS's own industrial hygienist determined that Plaintiff Maloney cannot continue to work in her current position, Plaintiff Maloney took medical leave to avoid further exacerbating her flexor tenosynovitis condition.

100.    DOS's decision to place Plaintiff Maloney in a temporary position which involves repetitive hand motions prejudiced her ability to complete relevant work experience necessary for appointment as a career FSO within her five-year window to do so.

12

101.    DRAD does not consider reassignment as a form of reasonable accommodation for career candidate FSOs.

102.    DRAD did not consider reassignment as a form of reasonable accommodation for Plaintiff Maloney.

103.    DOS does not consider reassignment as a form of reasonable accommodation for career candidate FSOs.

104.    DOS did not consider reassignment as a form of reasonable accommodation for Plaintiff Maloney.

105.    DOS's CDA does not consider reassignment as a form of reasonable accommodation for career candidate FSOs.

106.    DOS's CDA did not consider reassignment as a form of reasonable accommodation for Plaintiff Maloney.

## VII.    CLASS ACTION ALLEGATIONS

107.    Plaintiff brings this action as a class action pursuant to Rule 23(b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure ("FRCP") on behalf of the following defined Class and Subclass:

**Proposed Class:** all Foreign Service Officers who: (1) had an actual disability or record of disability, as defined in the Rehabilitation Act of 1973; (2) requested one or more accommodations for that disability through DRAD and/or CDA; and (3) were denied reasonable accommodations by the State Department from January 29, 2017 to the final disposition of this case.

**Proposed Subclass:** all members of the Class defined above and: (1) whose disability was flexor tenosynovitis, carpal tunnel syndrome, and/or a similar repeated-use hand or wrist impairment; (2) who were assigned visa line work; and (3) who were denied a reasonable accommodation that would relieve them of performing the duties of visa and passport adjudication.

13

CLASS ACTION COMPLAINT

108.   <u>Numerosity</u>: The Proposed Class (and Subclass) is so numerous that joinder of all members is impracticable.

109.   According to DOS's publicly available data, from January 1, 2017 through September 30, 2017, 59 DOS employees filed EEO complaints regarding disability discrimination. *See* https://www.state.gov/s/ocr/275437.htm (last visited Feb. 7, 2018).

110.   At least 12 DOS employees filed complaints against DOS from January 1, 2017 through September 30, 2017 alleging DOS failed to provide reasonable accommodations. *Id.*

111.   According to DOS's publicly available data, as of December 31, 2017, DOS employs 13,676 FSOs. *See* https://www.state.gov/documents/organization/277773.pdf (last visited Apr. 3, 2018). Thousands of these FSOs serve around the world.

112.   Because there are thousands of FSOs employed by DOS, dozens of whom took the reputational risk of filing disability discrimination EEO complaints in the first nine months of 2017, Plaintiff believes, and on that basis alleges, that during the relevant time period, there are at least dozens of individuals who are geographically dispersed around the country and the world and who satisfy the definition of the Proposed Class (and Subclass). Moreover, Plaintiff anticipates that the class (and subclass) will grow over time because, upon information and belief, DOS continues to maintain the challenged pattern, practice, and/or policy of failing to consider all forms of reasonable accommodation when engaging in the interactive process with FSOs requesting reasonable accommodations.

113.   <u>Typicality</u>: Plaintiff's claims are typical of the members of the Proposed Class (and Proposed Subclass).

114.   Plaintiff is an FSO with an actual disability and record of disability who requested and was denied, repeatedly, reasonable accommodations from DOS without consideration of all possible forms of reasonable accommodation available under the Rehabilitation Act.

115.   <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy, particularly in the context of applicants for employment, where individuals lack the financial resources to vigorously prosecute separate lawsuits in federal

14

court against a large governmental defendant, and fear retaliation and blackballing. Prosecuting dozens of identical individual lawsuits across the country on behalf of individuals dispersed around the world does not promote judicial efficiency, equity, or consistency in judicial results, when there is a single pattern, practice, and/or policy being challenged: DOS's failure to consider all forms of reasonable accommodation when it engages in the interactive process with FSOs with disabilities who request reasonable accommodations to allow them to perform their essential job functions.

116.    <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the proposed Class (and Subclass), has no conflicts with the proposed Class's interests (nor Subclass's interests), and has retained counsel experienced in complex class litigation against governmental employers, including class disability discrimination litigation against DOS relating to the Foreign Service. *See Meyer v. Kerry*, EEOC Appeal No. 0720110007 (June 6, 2014) (affirming class certification of class of qualified applicants with disabilities to Foreign Service who were delayed or denied hire because of DOS's pre-employment medical clearance policies and procedures; finding that Bryan Schwartz Law and co-counsel are adequate Class Counsel).

117.    <u>Commonality</u>:  Common questions of law and fact exist as to all members of the proposed Class (and Subclass) and predominate over any questions solely affecting individual members of the proposed Class (and Subclass), including but not limited to:

    A.    Whether DOS fails to consider certain forms of reasonable accommodation available under the Rehabilitation Act of 1973 when DOS has notice of an FSO's disability and request for reasonable accommodation;

    B.    Whether DOS's failure to consider modified duties as a form of reasonable accommodation violates Section 501 of the Rehabilitation Act of 1973;

    C.    Whether DOS's failure to consider reassignment as a form of reasonable accommodation violates Section 501 of the Rehabilitation Act of 1973;

    D.    The appropriate injunctive relief to prevent prospective harm to Plaintiff Maloney and those similarly situated;

E.      The proper measure of damages sustained by the proposed Class.

118.    This case is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because DOS has acted or refused to act on grounds that apply generally to the proposed Class, including but not limited to maintaining a uniform pattern, practice, and/or policy of failing to consider all forms of reasonable accommodation, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class (and Subclass) as a whole.

119.    Class certification is also appropriate under Federal Rule of Civil Procedure Rule 23(b)(3) because questions of law and fact common to the proposed Class (and proposed Subclass) predominate over any questions affecting only individual members of the proposed Class (and proposed Subclass), and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. DOS's uniform pattern, practice, and/or policy of failing to consider all possible forms of reasonable accommodation has stymied FSOs' careers and caused FSOs emotional and/or physical harm. The damages suffered by the individual proposed Class members (and proposed Subclass members) are small compared to the expense and burden of individual prosecution of this litigation. Proposed Class members (and proposed Subclass members) fear workplace retaliation and being "blackballed" from obtaining future employment. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about DOS's failure to consider all possible forms of reasonable accommodation.

120.    Class certification may also be maintained under Federal Rule of Civil Procedure Rule 23(c)(4) because resolving the central question of whether DOS systematically fails to consider all forms of reasonable accommodation with respect to FSOs with disabilities can be established with common proof using, for example, statistics, statements from DOS officials, and representative testimony and documents from class members. Thereafter, individual class members (and Subclass members) may be required to prove their individual entitlements to monetary recovery and DOS would have an opportunity to present any affirmative defenses with

CLASS ACTION COMPLAINT

respect to such individual Class (and Subclass) members in *Teamsters* hearings. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 361–62 (1977).

121.    Plaintiff Maloney intends to send notice to all members of the Proposed Class (and Proposed Subclass) to the extent required by Rule 23. The names, email addresses, and mailing addresses of the members of the Proposed Class (and Proposed Subclass) are available from DOS because class members are current and former DOS employees.

## VIII.    EXHAUSTION OF ADMINISTRATIVE REMEDIES AND TOLLING

122.    A federal employee seeking to assert a Rehabilitation Act claim in federal court must exhaust her or her administrative remedies, either with an individual complaint (29 C.F.R. § 1614.106) or a class complaint (29 C.F.R. § 1614.204).

123.    "[A]t any reasonable point in the process when it becomes apparent that there are class implications to the claim raised in an individual complaint," a plaintiff who initially filed a complaint to remedy individual discrimination may "move for class certification." MD-110, Ch. 8, § II.A. "'[M]ove' in this context means that the complainant must make his/her intention to process the complaint as a class action clear. A complainant may make his/her intention clear through a letter, a formal motion, or any means that effectively informs the agency or Administrative Judge of the complainant's intent to pursue a class action." *Id.* at n. 1.

124.    "A complainant who has filed an individual complaint [or] an agent who has filed a class complaint … is authorized under … the Rehabilitation Act to file a civil action in an appropriate United States District Court … [a]fter 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken." 29 C.F.R. § 1614.407(b).

125.    On March 2, 2017, Plaintiff Maloney submitted an application for an administrative waiver to then-DOS Director General Arnold A. Chacon seeking to waive her assignment to a consular position due to flexor tenosynovitis condition.

126.    On March 15, 2017, then-DOS Director General Chacon denied Plaintiff Maloney's request for reasonable accommodation.

17

127.    On March 15, 2017, Plaintiff Maloney timely contacted an EEO counselor.

128.    On April 26, 2017, Plaintiff Maloney timely filed her formal administrative class action complaint of disability discrimination, which stated that "[t]his is a class action complaint" and specified that the relief sought included "[m]onetary damages for myself and all other class members…."

129.    On June 28, 2017, Plaintiff Maloney, through counsel, supplemented her class complaint and sent copies to DOS's Office of Civil Rights.

130.    On June 30, 2017, DOS conveyed Plaintiff Maloney's administrative class action complaint to the Equal Employment Opportunity Commission.

131.    More than 180 days have elapsed since Plaintiff Maloney supplemented her class action complaint on June 28, 2017.

132.    No final action has been taken with respect to Plaintiff Maloney's administrative class action complaint alleging violations of the Rehabilitation Act.

133.    No appeal has been filed with respect to Plaintiff Maloney's administrative class action complaint alleging violations of the Rehabilitation Act.

134.    Accordingly, Plaintiff Maloney has timely exhausted her administrative remedies under the Rehabilitation Act.

### FIRST CLAIM FOR RELIEF
### Violation of Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791
### Disability Discrimination
### (Failure to Accommodate)

135.    Plaintiff Maloney, on behalf of herself and the proposed Class and Subclass, alleges and incorporates by reference the allegations in the preceding paragraphs.

136.    The standards for a violation of the provisions of the Rehabilitation Act of 1973 are the same as those under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 *et seq.* ("ADA").

137.    The ADA, in relevant part, prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or

18

discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

138.    The ADA, in relevant part, defines "discriminat[ion] against a qualified individual on the basis of disability" as "not making reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability who is an … employee, unless such covered entity can demonstrate that the accommodation would impose an undue burden on the operation of the business of such covered entity…."

139.    Plaintiff Maloney and each member of the proposed Class and Subclass is a "qualified individual" with a "disability" within the meaning of the Rehabilitation Act.

140.    DOS has never informed Plaintiff Maloney that DOS disputes her status as an individual with a disability.

141.    DOS has never informed Plaintiff Maloney that DOS disputes her status as qualified for the position of career candidate FSO.

142.    Upon information and belief, nearly all DOS's 200-plus posts around the world have had vacant positions for career candidate FSOs during the class period to which Plaintiff and at least some members of the Proposed Class and Subclass could have been reassigned.

143.    Plaintiff Maloney and each member of the proposed Class and Subclass requested reasonable accommodations in the form of modified job duties and/or reassignment to a vacant position, which DOS denied without consideration as a pattern, practice, and/or policy.

144.    DOS is an "employer" within the meaning of the Rehabilitation Act of 1973.

145.    As a direct, legal and proximate result of DOS's uniform pattern, practice, and/or policy of failing to consider all forms of reasonable accommodation, Plaintiff Maloney and the proposed Class and Subclass members have lost career opportunities and damages in an amount to be proven at trial.

146.    Pursuant to the Rehabilitation Act, 29 U.S.C. § 794a, and as a result of DOS's discriminatory conduct, Plaintiff, the Class, and the Subclass are entitled to recover damages for economic harm and emotional distress, attorneys' fees, legal costs, and expert witness fees.

19

CLASS ACTION COMPLAINT

147.    Plaintiff Maloney timely exhausted administrative remedies.

## **PRAYER FOR RELIEF**

148.    WHEREFORE, Plaintiff, on behalf of herself and all members of the Class and Subclass, prays for relief as follows:

A.    That the Court determine that this action may proceed as a class action under Rule 23(b)(2), (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure;

B.    That the Court adopt a *Teamsters* framework for adjudicating this case on a class-wide basis, i.e., certifying a liability class and thereafter permitting individualized damages proceedings;

C.    Programmatic relief requiring DOS to implement a disability accommodation system which considers the full range of possible accommodations available under the Rehabilitation Act in response to requests for accommodation;

D.    Compensatory damages, including emotional distress damages and lost wages and benefits, where applicable;

E.    Interest on judgment, including pre-judgment interest, to the extent permitted by law;

F.    Attorneys' fees and legal costs;

G.    For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Maloney, individually and on behalf of all others similarly situated, demands a trial by jury on all issues so triable.


DATED:  April 9, 2018          By:

_____/s/ Bryan J. Schwartz_____
Bryan J. Schwartz (DC Bar No. 482960)
Eduard R. Meleshinsky* (CA SBN 300547)

20

BRYAN SCHWARTZ LAW
Email: bryan@bryanschwartzlaw.com
         eduard@bryanschwartzlaw.com
1330 Broadway, Suite 1630
Oakland, CA 94612
Telephone: (510) 444-9300
Facsimile: (510) 444-9301

Matthew H. Morgan* (MN Bar No. 304657)
Anna P. Prakash* (MN Bar No. 0351362)
Robert L. Schug* (MN Bar No. 387013)
NICHOLS KASTER, PLLP
Email: morgan@nka.com
         aprakash@nka.com
         schug@nka.com
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878

*Attorneys for Plaintiff Maloney and the Putative Class*

*\* Pro Hac Vice application forthcoming*

21