### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGELA MALONEY,<br>*individually, on behalf of others*<br>*similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>ANTONY J. BLINKEN,<br>*in his official capacity as Secretary*,<br>*United States Department of State*,<br><br>Defendant. | Civil Action No. 18-0809 (ABJ) |

## MEMORANDUM OPINION

On April 9, 2018, plaintiff Angela Maloney initiated this action against the Secretary of the United States Department of State,[1] where she was formerly employed as a Foreign Service Officer. *See* Class Action Compl. for Damages and Injunctive Relief [Dkt. # 1] ¶¶ 1, 15.[2] Her amended complaint alleges that the Department discriminated against her in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, when it denied her the reasonable accommodation she requested for her wrist disability. Am. Compl. ¶¶ 157–59, 169–81.

Pending before the Court is defendant's motion for summary judgment. Def.'s Mot. for Summ. J., Mem. in Supp. of Def.'s Mot. for Summ. J. [Dkt. # 60] ("Mot."). Defendant argues it is entitled to summary judgment because the agency did not deny Maloney's March 2, 2017 request

---

1    As of March 18, 2021, current Secretary of State Antony J. Blinken was automatically substituted as a defendant pursuant to Federal Rule of Civil Procedure 25(d).

2    Plaintiff amended her complaint on December 14, 2018.  First Am. Class Action Compl. for Damages and Injunctive Relief [Dkt. # 24] ("Am. Compl.").

for an accommodation of her disability.  Mot. at 2.  The motion has been fully briefed.  Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. [Dkt. # 62] ("Opp."); Reply Mem. in Supp. of Def.'s Mot. for Summ. J. [Dkt. # 64] ("Reply").[3]

Because the request was not denied on or about March 15 as alleged, the Court will **GRANT** defendant's motion for summary judgment.

## BACKGROUND

Plaintiff joined the Department's Foreign Service in May 2015 as an entry level Foreign Service Officer and began her first assignment in Chennai, India in September 2015.  Def.'s SOF ¶ 1, citing Excerpts from Dep. of Angela E. Maloney (Feb. 9, 2022) [Dkt. # 60-3] ("Def.'s Excerpts of Maloney Dep.") at 14:1–5; Pl.'s Resp. to Def.'s SOF ¶ 1; Email from Angela E. Maloney to Arnold A. Chacon, Ambassador (Mar. 2, 2017), Ex. 9 to Decl. of Sarah Hunter, Att'y-Adviser, Off. of the Legal Adviser, U.S. Dep't of State ("Hunter Decl."), Mot. [Dkt. # 60-2] ("Mar. 2, 2017 Email") at 2.  Plaintiff's position involved "a high volume of visa adjudications," which required her to use repetitive hand motions.  Pl.'s SOF ¶ 13, citing Excerpts from Dep. of Angela E. Maloney (Feb. 9, 2022), Ex. 1 to Decl. of Chloe A. Raimey, Assoc.-Att'y, Nichols Kaster, PLLP ("Raimey Decl."), Opp. [Dkt. # 62-3] ("Pl.'s Excerpts of Maloney Dep.") at 142 (discussing visa

---

3    Defendant submitted a statement of undisputed material facts – as to which he contends there is no genuine issue – in support of the motion for summary judgment.  *See* Def.'s Statement of Undisputed Material Facts [Dkt. # 60] ("Def.'s SOF") ¶¶ 1–44.  Plaintiff filed a response, as well as a statement of material facts, Pl.'s Resp. to Def.'s SOF [Dkt. # 62] ¶¶ 1–44; Pl.'s Statement of Additional Material Facts [Dkt. # 62] ("Pl.'s SOF") ¶¶ 1–85.  Defendant filed a reply.  Def.'s Resp. to Pl.'s Statement of Additional Facts [Dkt. # 64-1] ("Def.'s Resp. to Pl.'s SOF") ¶¶ 1–85.

Pursuant to Local Civil Rule 7(h)(1), "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."

duties); Def.'s Resp. to Pl.'s SOF ¶ 13; *see* Pl.'s SOF ¶ 15 (referencing "repetitive use" of plaintiff's "hand and wrist on the visa line"); Def.'s Resp. to Pl.'s SOF ¶ 15.

By "approximately New Year 2016," plaintiff began experiencing pain in her right hand, rendering her "unable to use her right hand for even simple tasks such as picking up a pen, writing, [and] using a knife and fork." Pl.'s SOF ¶ 15, citing Mar. 2, 2017 Email at 2;[4] Def.'s Resp. to Pl.'s SOF ¶ 15.  In February of 2016, she was medically evacuated to the United States to receive treatment for her pain, and she was diagnosed as suffering from the condition "flexor tenosynovitis." Def.'s SOF ¶ 2, citing Mar. 2, 2017 Email at 2; Pl.'s Resp. to Def.'s SOF ¶ 2; *see* Off. Visit Progress Notes, Johns Hopkins Med., Ex. 21 to Hunter Decl., Mot. [Dkt. # 60-2] (discussing plaintiff's flexor tenosynovitis).

Upon her return to the United States, plaintiff worked on a "bridge assignment" in Washington, D.C.  Pl.'s SOF ¶ 28, citing Pl.'s Excerpts of Maloney Dep. at 15:6–16:10; Def.'s Resp. to Pl.'s SOF ¶ 28 (admitting that plaintiff was on bridge assignment).  In that position, she began using "Dragon NaturallySpeaking" dictation software, which transposed spoken words into typed words.  Pl.'s SOF ¶ 30, citing Pl.'s Excerpts of Maloney Dep. at 32:20–23; Def.'s Resp. to Pl.'s SOF ¶ 30.  The software reduced plaintiff's need to use her hands, though it was still necessary "to go back and make corrections" to the text.  Pl.'s SOF ¶ 31, citing Pl.'s Excerpts of Maloney Dep. at 33:1–16; Def.'s Resp. to Pl.'s SOF ¶ 31.  Plaintiff has testified that the pain in her right hand continued despite using the software and she also began experiencing pain in her left hand.  Pl.'s SOF ¶ 33, citing Pl.'s Excerpts of Maloney Dep. at 33:8–22; After Visit Summary

---

4    Plaintiff also submitted this email as an exhibit to her amended complaint.  *See* Ex. C to Am. Compl. [Dkt. # 24-3].  The Court will cite to the exhibit appended to defendant's motion, as that document also shows Ambassador Chacon's response to her email.

(Jan. 31, 2017), Johns Hopkins Med., Ex. 5 to Hunter Decl., Mot. [Dkt. # 60-2]; Def.'s Resp. to

Pl.'s SOF ¶ 33.

On June 23, 2016, plaintiff's doctor wrote that he was "able to medically clear [plaintiff]

to return to work," but that she would have to abide by the following restrictions for three months:

1. She should only type continuously for a maximum of one-half hour[,] after[]
   which she should have a 10-minute break.

2. She should avoid repetitive hand and wrist motions, specifically she should
   not be asked to work on the visa line.

3. Her lifting should be limited to 10 pounds.

Off. Visit in Johns Hopkins Orthopedics Progress Notes, Ex. 9 to Raimey Decl., Opp. [Dkt. # 62-

11]. "[A]fter receiving medical treatment," plaintiff was assigned to a consular position in Nassau,

Bahamas.  Def.'s SOF ¶ 4, citing Def.'s Excerpts of Maloney Dep. at 40:1–9; Pl.'s Resp. to Def.'s

SOF ¶ 4.  Maloney never went to the Bahamas, though.  *See* Def.'s SOF ¶ 6; Pl.'s Resp. to Def.'s

SOF ¶ 6.

 Maloney initiated an EEO complaint[5] in October 2016, alleging that "she had been denied

accommodations to address her medical condition."  Def.'s SOF ¶ 5, citing Def.'s Excerpts of

Maloney Dep. at 43:3–7; Pl.'s Resp. to Def.'s SOF ¶ 5.

On October 26, 2016, plaintiff entered into a "Global Settlement Agreement" with the

Department to resolve her claims.  In it, plaintiff agreed to

> relinquish, waive, forego, forever discharge, fully release, and quit for all
> time any and all claims, demands, actions, causes of action, complaints, or
> suits against the Department . . . including but not limited to any complaints
> to the Equal Employment Opportunity Commission . . . arising, or which
> might arise, up to and including the date of this Agreement.

---

5      The Court presumes that the EEO complaint refers to an equal employment opportunity
complaint filed with the Department's Office of Civil Rights.

Glob. Settlement Agreement, Ex. 2 to Hunter Decl., Mot. [Dkt. # 60-2] ¶ 1; *id.* at 5.  Plaintiff also agreed to "be assigned to, and to serve in, a two year tour of duty as a Consular Officer-Economic Officer at Embassy Tegucigalpa . . . beginning approximately October 2017, to include approximately one year of consular work." *Id.* ¶ 13(a).

The agreement further stipulated that plaintiff would "engage in the interactive process with the Office of Disability and Accommodation, Disability and Reasonable Accommodation Division (HR/OAA/DRAD) . . . prior to and upon her arrival at Embassy Tegucigalpa in order to facilitate the implementation of any necessary and appropriate reasonable accommodation(s)." *Id.* ¶ 13(c).  Notwithstanding the settlement, plaintiff never reported to Tegucigalpa either.  *See* Def.'s SOF ¶ 42; Pl.'s Resp. to Def.'s SOF ¶ 42.

On February 3, 2017, plaintiff emailed an individual in the HR/OAA/AD – Accessibility Division, attaching a January 31, 2017 note from her physician that stated she should refrain from "repetitive act[s]," "typing for more [than] 30 min.," and "lifting more than 10 lbs."  Email from Angela E. Maloney to Scott H. Duncan (Feb. 3, 2017), Ex. 5 to Hunter Decl., Mot. [Dkt. # 60-2] at 55.[6]  Her email explained that the restrictions on her movements remained the same as before, but "now have no expiration date."  *Id.* at 47–48.  She also wrote: "[t]he doctor is quite appalled at the Department's unwillingness to comply with his orders and, in particular, the Department's inexplicable focus on sending me to a visa line.  I understand a strongly worded letter about the issue will be coming from him in the future."  *Id.* at 48.

---

6      The page for this citation refers to the PDF page number printed on the filing by the Court's Electronic Filing System, appearing at the top of the page.

About a month later, on March 2, 2017, plaintiff emailed the Director General of the Foreign Service, Ambassador Arnold Chacon, concerning the assignment that had been agreed to in October:

> I request that my current onward assignment to Tegucigalpa be reassessed in light of the fact that I have already sustained an injury that is likely to continue for the foreseeable future, probably for the rest of my life.  That injury was caused by working on a visa line, which is the same work that I expect to perform in Tegucigalpa.

Mar. 2, 2017 Email at 1; *see* Hunter Decl. ¶ 12 (noting Chacon's full title).  The email provided Chacon with background information about plaintiff's condition, her medical evacuation from Chennai, her medical treatment since then, and the existence of the EEO complaint and settlement. Mar. 2, 2017 Email at 2.  She also informed the Ambassador of her current doctor's orders, and HR/OAA/DRAD's intention to provide her with Dragon NaturallySpeaking dictation software at her post in Tegucigalpa.  *Id.* at 2–3.  Plaintiff concluded the email as follows:

> I need to be assigned to a non-consular position.  If all else were equal, I would prefer to serve out the remainder of my consular term like anyone else.  But all is not equal.  I know that consular roles tend to be especially heavy on data entry and similar work and it may be difficult, if not impossible, to assign me to a non-visa consular role.  I also know that no matter where I am assigned, my lifting limitations are going to make it very difficult to unpack and set up a new home . . . .  This points toward safety as the best course and a position more similar to what I'm doing now, where we know it is possible for me to work without injury, as the best option because it will create the least additional risk of further injury.
>
> Accordingly, I request to be assigned to a non-consular position in Tegucigalpa or elsewhere.

*Id.* at 4.  Attached to the email was a letter from plaintiff's doctor.  Def.'s SOF ¶ 18, citing Letter from John V. Ingari, MD, to Arnold A. Chacon, Ex. C to Am. Compl. [Dkt. # 24-3]; Pl.'s Resp. to Def.'s SOF ¶ 18.

The Department's Office of Career Development and Assignments ("CDA") sent the Ambassador a memorandum recommending a response "that we will not break her rotational assignment in Tegucigalpa and that she should re-engage in the interactive process to pursue potential reasonable accommodation solutions through DRAD." Mem. from Maria Brewer, HR/CDA, to Arnold A. Chacon, Ex. 23 to Hunter Decl., Mot. [Dkt. # 60-2] ("Rec. to Chacon") at 1. On March 15, 2017, the Ambassador initialed the memorandum indicating that he concurred with the recommendation, *id.*, and he replied to plaintiff the same day. *See* Email from Arnold A. Chacon to Angela E. Maloney (Mar. 15, 2017), Ex. 9 to Hunter Decl., Mot. [Dkt. # 60-2] ("Mar. 15, 2017 Email").

In his email to Maloney, Chacon wrote:

> I have carefully considered your request to waive your consular requirement. I am sympathetic to the complexity of your situation, but cannot approve your request.
>
> The Office of Accessibility and Accommodation, Disability and Reasonable Accommodation Division (HR/OAA/DRAD) is the Department's designated decision maker on requests for reasonable accommodations for qualified individuals with disabilities. The Office of Medical Services Occupational Health Division of Domestic Programs (MED/DASH/DP) is prepared to review any new medical documentation from your doctors relating to your request for a reasonable accommodation. HR/OAA/DRAD is prepared to assess and to discuss, via the interactive process, options for reasonable accommodations that would allow you to effectively perform the essential functions of your consular position.

Mar. 15, 2017 Email.

Later that day, plaintiff asked to be assigned "an EEO counselor as quickly as possible" to initiate an EEO complaint. Email from Angela E. Maloney to SOCR_Counselor_Channel (Mar. 15, 2017), Ex. 27 to Raimey Decl., Opp. [Dkt. # 62-29] at 2.

The following day, on March 16, plaintiff met with DRAD to discuss accommodations for her Tegucigalpa assignment. Def.'s SOF ¶ 26, citing Def.'s Excerpts of Maloney Dep. at 113:1–

114:19, 120:1–122:25; Pl.'s Resp. to Def.'s SOF ¶ 26.   She continued to discuss potential accommodations with the Department through August of 2017.   *See* Pl.'s SOF ¶ 66 (timeline of communications with DRAD); Def.'s Resp. to Pl.'s SOF ¶ 66 (admitting existence of communications).

**Procedural History**

In the meantime, on April 26, 2017, approximately a month after she received the Ambassador's email, plaintiff filed a formal complaint of discrimination with the Department's Office of Civil Rights.  Formal Compl. of Discrim. ("EEO Compl."), Ex. A to Letter from Eduard R. Meleshinsky, Esq., Brian Schwartz Law, to Claudette R.L. Rhone, EEO Specialist, U.S. Dep't of State (June 28, 2017) ("Letter re: EEO Compl."), Ex. D to Am. Compl. [Dkt. # 24-4].  In her complaint, she wrote that the alleged discrimination occurred on March 15 and March 17, 2017, EEO Compl. at 1, and she listed "three acts of discrimination by the Department of State . . . in violation of the Rehabilitation Act of 1973":

Discriminatory Action #1:

From March 13 to 31, 2017, I participated in Political and Economic Tradecraft training at the Foreign Service Institute ("FSI") in Arlington, Virginia.  The Department's Disability and Reasonable Accommodation Division ("DRAD"), agreed to provide me with Dragon NaturallySpeaking dictation software loaded onto a laptop computer so that I could participate in the class by, among other things, performing writing assignments.  The software failed to operate correctly.  HR/OAA/DRAD declined to repair it. As a result, I was left with no accommodation whatsoever and forced to type in excess of the amount that my doctor indicates I can safely perform. I sustained injury as a result.

Discriminatory Action #2:

Since early March 2017, I have requested that DRAD provide me with reasonable accommodation in connection with Spanish-language training that I am to take beginning on May 1, 2017.  Despite repeated requests, DRAD has made no substantive response.  As a result, I am

8

scheduled to begin Spanish-language training with no reasonable
accommodation whatsoever and will be disadvantaged as a result.

Discriminatory Action #3:

Four physicians have ordered that under no circumstances should I
return to work on a nonimmigrant visa line.  As such, I cannot be
accommodated in that position and am not a qualified individual with a
disability for purposes of working on a nonimmigrant visa line.

There is no Department policy that requires me to work on a
nonimmigrant visa line.  The Department, however, has assigned me to
work on a nonimmigrant visa line anyway.  **On or about March 15, 2017,
the Department refused to reasonably accommodate me by reassigning
me to a different position.**

Class Allegations

The Department has a policy and/or practice of denying reasonable
accommodation to Department employees. The discriminatory actions I
have experienced are result of that policy and/or practice.  Many other
Department employees are also affected by this policy and/or practice.

*Id.* at 2–3 (emphasis added).[7]  The administrative complaint did not include any claims based on

events after March 17, 2017.  *See generally id.*

On June 28, 2017, after plaintiff received a letter from the agency acknowledging receipt

of the complaint, her counsel wrote to the agency "object[ing] to the Agency's characterization of

her class complaint as an individual complaint," and supplementing the information in support of

her class allegations.  *See* Letter re: EEO Compl. at 1–2; Class Agent's Suppl. to Formal Class

Compl., Ex. B to Letter re: EEO Compl. [Dkt. # 24-4] ("Class Agent's Suppl.").  The supplement

asserted:

The Department has a policy and/or practice of denying reasonable
accommodation to Department employees without providing individualized
consideration, without an interactive dialogue, and without identifying any
undue hardship or direct threat.  The discriminatory actions Ms. Maloney
has experienced - including but not limited to being assigned to the visa line

---

7       The cited page numbers refer to the pages attached to the EEO complaint.

9

> in violation of her written medical directives to avoid such tasks - are a result of that Department-wide policy and/or practice. Many other Department employees are also affected by this policy and/or practice of failing to provide reasonable accommodations to enable disabled Foreign Service Officers to perform their essential job functions.

Class Agent's Suppl. at 1. The rest of the supplement addressed why the class action prerequisites of "numerosity," "commonality," "typicality and adequacy of representation" had been met. *Id.* at 1–3.

Plaintiff filed a complaint in this Court on April 9, 2018, and then amended her complaint on December 14, 2018. *See* Compl.; Am. Compl. In the amended version, she claimed that she "requested reasonable accommodations in the form of modified job duties and/or reassignment to a vacant position, which [the Department] denied without consideration as a pattern, practice, and/or policy," Am. Compl. ¶ 177, in violation of the Rehabilitation Act of 1973. Am. Compl. ¶¶ 169–81. On March 6, 2019, defendant filed a motion to dismiss, or in the alternative, for summary judgment, which plaintiff opposed. Def.'s Mot. to Dismiss Am. Compl. or, Alt., for Summ. J. [Dkt. # 28]; Pl. Angela Maloney's Opp. to Def.'s Mot. to Dismiss or, in the Alt., Mot. for Summ. J. [Dkt. # 30] ("Opp. to Mot. to Dismiss"). The Court granted the motion to dismiss in part in an oral ruling on September 29, 2020. *See* Tr. of Status Conf. (Sept. 29, 2020) [Dkt. # 39] ("Oral Ruling Tr."); Min. Entry (Sept. 29, 2020). It excluded all claims based on events that preceded the October 2016 settlement, and it found that the only claim arising afterwards which had been exhausted was the one alleging that plaintiff had been denied a reasonable accommodation in the form of a reassignment on March 15, 2017; all other claims were dismissed for lack of jurisdiction pursuant to Rule 12(b)(1). *See* Oral Ruling Tr. at 5:9–19, 23:1–18. Plaintiff's factual allegations were accepted as true for purposes of the motion, and the exhausted claim concerning the Ambassador's letter moved forward. The Court declined defendant's request

that it grant summary judgment at that early stage, since the facts – such as those concerning whether the reassignment request was reasonable – had not yet been developed.  *Id.* at 5:12–17. The Court also declined to launch class certification proceedings or class discovery before that work took place.  *Id.* at 6:2–8.

A year and a half later, on April 14, 2022, defendant moved for summary judgment on the sole remaining claim.  *See* Mot.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment

motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal alterations omitted), *quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## ANALYSIS

Under the Rehabilitation Act, Maloney must come forward with sufficient evidence at the motion for summary judgment stage to allow a reasonable jury to conclude that "(i) she was disabled within the meaning of the Rehabilitation Act; (ii) her employer had notice of her disability; (iii) she was able to perform the essential functions of her job with or without reasonable accommodation; and (iv) her employer denied her request for a reasonable accommodation of that disability." *Doak v. Johnson*, 798 F.3d 1096, 1105 (D.C. Cir. 2015).

"For purposes of this motion, [d]efendant does not dispute that Maloney was an individual with a disability under the Rehabilitation Act."  Mot. at 6 n.4.  It also does not dispute that it had notice of her disability.  *See* Mot. at 5–13 (discussing Maloney's medical evacuation as a result of her disability in February 2016, treatment in the United States, and October 2016 global settlement agreement to resolve claims asserted in prior EEO complaint, allegedly resulting from denied accommodations to address medical condition); *see also* Opp. at 14 ("The Department does not dispute the first two elements of Ms. Maloney's reasonable accommodation claim . . . .").  This leaves the question of whether the agency denied a request for a reasonable accommodation.

As the EEOC explains in its regulations, "[t]o determine the appropriate reasonable accommodation[,] it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation.  This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."  29 C.F.R. § 1630.2(o)(3) (EEOC regulation); *see Doak*, 798 F.3d at 1099.  According to the D.C. Circuit, "[f]ew disabilities are

amenable to one-size-fits-all accommodations. . . .  The process contemplated is 'a flexible give-and-take' between employer and employee 'so that together they can determine what accommodation would enable the employee to continue working.'" *Ward v. McDonald*, 762 F.3d 24, 31–32 (D.C. Cir. 2014), quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005).  Given that background,

> courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary.  A party that obstructs or delays the interactive process is not acting in good faith.  A party that fails to communicate, by way of initiation or response, may also be acting in bad faith.  In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

*Id.* at 32.  Therefore, "to establish that her request was 'denied,' [plaintiff] must show either that the [employer] in fact ended the interactive process or that it participated in the process in bad faith."  *Id.*

It is also well-established that an "employer is not required to provide an employee that accommodation he requests or prefers[;] the employer need only provide some reasonable accommodation."  *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998) (internal citation omitted); *see Porter v. Jackson*, 668 F. Supp. 2d 222, 235 (D.D.C. 2009), *aff'd*, 410 F. App'x 348 (D.C. Cir. 2010) (finding that employer proposed a reasonable accommodation to plaintiff after it rejected plaintiff's requested accommodation to relocate).  This principle has been applied in the context of requests for transfers.  *See Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996) ("[W]hen an employee requests a transfer as reasonable accommodation and the employer offers alternative reasonable accommodation[s], which the employee then refuses, the employer cannot be liable for failing to reasonably accommodate the employee by not transferring him to another position.").

With respect to whether a reasonable request has been "denied," "[a]n employee's rejection of an employer's proposed reasonable accommodation is one example of bad-faith termination of the interaction process.  In contrast, employers can show good faith by meeting with the employee, requesting information about his condition and limitations, asking the employee what he specifically wants, showing signs of having considered the employee's request, and discussing alternatives when the request is burdensome."  *Richardson v. Mayorkas*, No. CV 17-1588, 2023 WL 2562156, at *10 (D.D.C. Mar. 17, 2023) (internal citations omitted); *see also Stewart v. St. Elizabeths Hosp.*, 589 F.3d 1305, 1309 (D.C. Cir. 2010) (concluding that a reasonable jury could not have found that employer denied request for accommodation by acting in bad faith because it met with disabled employee and said it would try to assist employee after she submitted necessary paperwork).

Finally, "there are certainly circumstances in which a long-delayed accommodation could be considered unreasonable."  *Mogenhan v. Napolitano*, 613 F.3d 1162, 1168 (D.C. Cir. 2010) (internal quotation marks omitted); *see Kirkland v. Nielsen*, No. CV 13-194, 2019 WL 1428354, at *5 (D.D.C. Mar. 30, 2019) ("In determining whether a particular delay is reasonable, the inquiry hinges on factors such as 'the length of the delay, the reasons for the delay, whether the employer has offered any alternative accommodations while evaluating a particular request, and whether the employer has acted in good faith.'"), quoting *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1262–63 (10th Cir. 2001).

## I.   Alleged Discrimination on March 15, 2017

Defendant argues it is entitled to summary judgment because the undisputed evidence shows that Maloney's reassignment request "was not denied by Chacon—who was not the designated decisionmaker for reasonable accommodation requests—but instead was appropriately

re-directed by Chacon to DRAD." Mot. at 2; *see* Reply at 5. Plaintiff responds by characterizing

Chacon's March 15th email as "[t]he beginning of the end for [her] career," when the Ambassador

"chose to deny reassignment, directing her to continue working with DRAD on accommodations

that would require her to perform visa-line duties against her doctors' orders." Opp. at 9.

So what did Ambassador Chacon say? In his reply to plaintiff's email, he wrote:

> I have carefully considered your request to waive your consular requirement.[8] I am sympathetic to the complexity of your situation, but cannot approve your request.
>
> The Office of Accessibility and Accommodation, Disability and Reasonable Accommodation Division (HR/OAA/DRAD) is the Department's designated decision maker on requests for reasonable accommodations for qualified individuals with disabilities. The Office of Medical Services Occupational Health Division of Domestic Programs (MED/DASH/DP) is prepared to review any new medical documentation from your doctors relating to your request for a reasonable accommodation. HR/OAA/DRAD is prepared to assess and to discuss, via the interactive process, options for reasonable accommodations that would allow you to effectively perform the essential functions of your consular position.

Mar. 15, 2017 Email at 1.

Plaintiff maintains that this response "was a clear-cut denial" of her request for a reasonable

accommodation of reassignment. Opp. at 30; *see also* Pl.'s SOF ¶ 56 ("On March 15, 2017,

Director General Chacon sent Ms. Maloney an email denying her request for reassignment and

directing her to work with DRAD and MED on other forms of accommodation."). But it is the

wording of the undisputed communication, and not plaintiff's paraphrasing, that controls. It is not

clear that Chacon was directly addressing a request for reassignment; he says, "I have carefully

---

8       The consular requirement is set out in the Foreign Affairs Handbook. Foreign Affairs Handbook, Ex. 1 to Hunter Decl., Mot. [Dkt. # 60-2] at 1 (requiring "[a]ll junior officer candidates [to] serve in consular work abroad, normally for a minimum of one year, but no less than ten months. Service needs permitting the work in the administrative cone can be substituted for the consular requirement at the discretion of HR/CDA.").

considered your request to *waive your consular requirement*. . . . [I] cannot approve your request."
Mar. 15, 2017 Email at 1 (emphasis added).[9]  More importantly, for purposes of what the plaintiff
must prove, he goes on to say that it is the Department's Disability and Reasonable
Accommodation Division that "is the Department's designated decision maker on requests for
reasonable accommodations for qualified individuals with disabilities," and that "DRAD is
prepared to assess and to discuss, via the interactive process, options for reasonable
accommodations that would allow you to effectively perform the essential functions of your
consular position." *Id.*  He did not *end* the interactive process or make any final decisions as to
potential accommodations;[10] rather, he told Maloney that the Department was prepared to engage

---

9       In an October 12, 2021 deposition, Chacon testified that he considered Maloney's request
to be a "request for a reassignment of consular work.  It wasn't an accommodation request.  But
given the background and how it was presented, I . . . decided that she should re-engage and that
they should contact the appropriate experts in this field to continue that process, to see how she
might be able to fulfill her work in the consular section."  Excerpts of Remote Dep. of Arnold A.
Chacon (Oct. 12, 2021), Ex. 2 to Reply [Dkt. # 64-3] at 59:13–20.

10      Chacon also explained that he

> was not in a position to make a judgment on what she was saying [about her
> disability].  DRAD didn't come to me with, you know, a recommendation.
> It wasn't put to me.  This was about a reassignment.  She couldn't do
> consular work, and based on the information I had, *she should continue to
> explore this* before, you know, that would even be part of any decision. . . .
> I was basically encouraging her to -- obviously, she had engaged at some
> point, but I did not have the information to determine that she should be
> reassigned, and that's why I encouraged her to continue doing what she was
> doing and reach out to the experts. . . .  I was sending her, basically, to the
> experts to continue exploring, you know, what it was that she was seeking.
>                                     . . . .
> I just thought the process was incomplete and that engaging or re-engaging
> with these appropriate experts would give the information that I would need
> to be able to really determine, finally, how to proceed.

Excerpts of Remote Dep. of Arnold A. Chacon (Oct. 12, 2021), Ex. 1 to Raimey Decl., Opp.
[Dkt. # 62-3] at 60:16–61:17, 68:12–16 (emphasis added).

with her to provide a reasonable accommodation that would enable her to do the job.[11]   Just because he did not immediately give plaintiff what she wanted – reassignment to a non-consular or non-visa line role – does not mean that either he or the Department had made any final decision at that stage, or that the Department did not engage in good faith to arrive at an acceptable accommodation.[12]

---

[11]     The Department drafted this response and recommended that Chacon circulate it to Maloney, explaining to him that:

> Ms. Maloney currently uses Dragon NaturallySpeaking dictation software in her Y-tour.  DRAD affirms that other accommodations are available, including the use of a human assistant if technological solutions are not sufficient in Tegucigalpa.  We recommend you encourage Ms. Maloney to re-engage in the interactive process with DRAD that she committed to as part of the settlement agreement.  According to DRAD, persons with severe disabilities have successfully performed their consular duties with Department-provided accommodations in the past.  As of August 16, 2016, Ms. Maloney holds a Class 1 medical clearance and remains worldwide available.

> Although ELGEN has the ability to waive the 12-month consular requirement, the Department's current staffing realities mean that vast majority of ELOs [entry-level officers] do at least 24 months of consular work.  To be fair and equitable to other Entry-level officers, the requirement should be waived only in the most exceptional of circumstances.  In addition, consular work demonstrates a number of skill sets and precepts that remain key for evaluation by Commissioning and Tenure Boards.

Rec. to Chacon at 2; *see* Def.'s SOF ¶ 24; Pl.'s Resp. to Def.'s SOF ¶ 24.

[12]     Indeed, the record shows that the informal, interactive process began promptly after the email.  Plaintiff met with DRAD the next day, at which time the parties discussed the possibility of her using a foot pedal to operate Dragon NaturallySpeaking dictation software and assigning her a personal assistant.  Def.'s SOF ¶¶ 26–27; Pl.'s Resp. to Def.'s SOF ¶¶ 26–27; *see* Email from Gina E. Scarsella to Stephen M. King (Mar. 17, 2017), Ex. 11 to Hunter Decl., Mot. [Dkt. # 60-2] (summarizing DRAD's March 16 meeting with Maloney).

For a short period of time thereafter, Maloney continued to communicate with DRAD about other potential accommodations. *See e.g.*, Email from Angela Maloney to Linda B. Lee (Apr. 24, 2017), Ex. 15 to Hunter Decl., Mot. [Dkt. # 60-2] at 90.[13] All of this undisputed evidence supports the conclusion that Chacon was engaging in good faith on March 15 by encouraging Maloney to communicate with DRAD to find a reasonable accommodation.[14] By April 26, though, plaintiff was already complaining to the EEO office that Chacon had "refused" to reasonably accommodate her in March. EEO Compl. at 3.

Because plaintiff has not come forward with any evidence to support a finding that as of March 15, the Department either ended the interactive process or participated in bad faith, she cannot establish that her request was denied in March as the complaint alleged.

Plaintiff maintains that "[e]ven if these rejections of reassignment requests are not concluded to be absolute denials of reasonable accommodations by the trier of fact, as the D.C. Circuit has explained, there are certainly circumstances in which a long-delayed accommodation could be considered unreasonable and hence actionable under the ADA or Rehabilitation Act." Opp. at 28, quoting *Mogenhan*, 613 F.3d at 1168 (internal alterations and quotation marks omitted). While it is true that a plaintiff could bring an action against her employer for taking too long to provide her with an effective accommodation, this case has never been about the Department providing her with an accommodation after dragging its feet for an unreasonable amount of time, and no such claim was ever presented to the agency or exhausted. Plaintiff's only

---

13    The page for this citation refers to the PDF page number printed on the filing by the Court's Electronic Filing System, appearing at the top of the page.

14    Maloney argues that the Department failed to engage in the interactive process in good faith in the interactions that followed Chacon's email. *See* Opp. at 9–10, 31–36. But the appropriate question is whether Chacon was in fact engaging in good faith when he sent the email on March 15 – when the alleged failure to accommodate occurred – and whether the interactions with DRAD were in fact *intended* to explore reasonable accommodations.

contention was that she was "denied" the "requested reasonable accommodations," *see* Am. Compl. ¶ 177; not that there was a delay in providing her with an accommodation.  So Maloney's belated suggestion that the Department may be liable for delayed accommodations also fails.

Because there is no genuine dispute of material fact with respect to the question of whether Maloney's request was in fact denied by Chacon on March 15, the Court does not need to decide whether her request was reasonable or whether she was able to perform the essential functions of her job with or without reasonable accommodation.  Since her request was not denied, and since that is the only claim left in the case, the Court will grant summary judgment for the defendant.

## II.     Alleged Discrimination after March 15, 2017

Notwithstanding the Court's ruling in connection with the motion to dismiss, plaintiff dedicates a considerable portion of her brief on summary judgment to the interactions with DRAD that followed the exchange of emails in March.  *See* Opp. at 28 ("[T]he Department denied and reiterated its denial repeatedly of Ms. Maloney's reasonable accommodation request seeking reassignment, in March, May, and October 2017.").  Plaintiff marshals facts to show, as she sees it, that what she was requesting was reasonable, and that it was the Department that ended the dialogue.  *Id.* at 31–33 (discussing whether Department participated in good faith in interactive process after March 17); *see also* Reply at 16.

None of these facts are relevant or material – and none can stave off summary judgment – because none of these allegations have been exhausted.

In the amended version of the complaint, plaintiff claimed that she "requested reasonable accommodations in the form of modified job duties and/or reassignment to a vacant position, which [the Department] denied without consideration as a pattern, practice, and/or policy."  Am. Compl. ¶ 177.  This, she alleged, violated the Rehabilitation Act of 1973.  Am. Compl. ¶¶ 169–

81.  The Rehabilitation Act incorporates the standards of the Americans with Disabilities Act, *see* 29 U.S.C. § 794(d), and it requires federal employers to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business."  42 U.S.C. § 12112(b)(5)(A).  The Act requires individuals to exhaust administrative remedies before they can file suit.  29 U.S.C. § 794(a)(1); *see Doak*, 798 F.3d at 1099; *see Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006) (finding that district court should have dismissed Rehabilitation Act claim for lack of jurisdiction on the ground that plaintiff failed to exhaust administrative remedy).

But plaintiff did not include any claims about DRAD denying her requests to modify her job duties in her EEO complaints; the closest she came was to allege that "[o]n or about March 15, 2017, the Department refused to reasonably accommodate me by reassigning me to a different position."  EEO Compl. at 3.  But the only thing that occurred on March 15, 2017 was Ambassador Chacon's email.

Further, the document submitted under the title, "Class Agent's Supplement to Formal Class Complaint," [Dkt. # 24-4], did not put the Department on notice that plaintiff's allegations included a claim concerning a denial of a request to modify job duties.  For one, the supplement was submitted for the stated purpose of "object[ing] to the Agency's characterization of her class complaint as an individual complaint," and explaining why the Department erred "as a matter of law."  Letter re: EEO Compl. at 1.  And while the supplement does submit that Maloney experienced discrimination as a result of an alleged departmental policy or practice of denying reasonable accommodations without providing individualized consideration, Class Agent's Suppl. at 1, it does not specify that she was denied a reasonable accommodation after March 15 because

20

her employer denied a request to modify her job duties. The supplement did not detail the nature of any accommodations that were allegedly requested or denied. *Id.* at 13–14.

In the section titled "Typicality and Adequacy of Representation are Satisfied," plaintiff wrote that she

> has repeatedly sought an accommodation from the Department to refrain from performing tasks requiring repetitive hand motions because such tasks are precluded by her chronic tenosynovitis condition. The Department has refused to provide such an accommodation, and instead has insisted that Ms. Maloney must perform such duties before the Department will consider any accommodation, essentially directing Ms. Maloney to further damage her wrists in order for her request for accommodation to be reviewed in earnest by the Department.

*Id.* at 3; *see* Am. Compl. ¶ 163 (quoting supplement verbatim). But these vague allegations that do not identify any particular request, much less when it was made and when it was allegedly denied, were offered to support and advance the class allegations and plaintiff's suitability as a class representative. In her opposition to the motion to dismiss, plaintiff cites this portion of the supplement to show that "she raised DOS's *pattern, practice, and policy* of denying reasonable accommodations such as modified job duties or reassignment to another vacant position at a foreign post in writing, through counsel." Opp. to Mot. to Dismiss at 20 (emphasis added), citing Am. Compl. ¶ 163. But there is nothing in the class agent's supplement that added new claims to the original EEO complaint and that would have put the agency on notice of any additional failure to accommodate claim arising out of the interactive process the agency initiated after March 17. That is why the Court ruled at the time of the motion to dismiss that no claims arising after the Chacon email had been exhausted.

Therefore, the Court must reiterate that it only has jurisdiction to consider plaintiff's longstanding claim that she was denied a reasonable accommodation when the Department did not reassign her to a new position on March 15, 2017; any claims about what happened next were not

appropriately exhausted, and the Court cannot take them up at this time simply because plaintiff discussed them in her brief.

## CONCLUSION

For all of these reasons, the Court will **GRANT** defendant's motion for summary judgment.

A separate order will issue.


AMY BERMAN JACKSON
United States District Judge


DATE:  September 28, 2023